Frank, good afternoon. Good afternoon, Your Honors. If it pleases the Court, my name is Frank Harrell. I am here for the appellants and the defendants. As the Court is aware from the briefing, this is a jail medical care case. Plaintiff's fundamental argument is the jail medical professionals in this case that they have sued should have done a better job. But one of the striking things about this case is both in the trial court and here, the only thing that they have to rely on in making that claim is to lay arguments of their own attorneys. Counsel, help me on a preliminary issue before we get to that. Sure. This motion to strike, it looks like all the documents that are proposed to be stricken were considered by the district court. So I don't understand what the motion to strike is all about. Your Honor, that just is not accurate. Okay. Help me. Sure. After the briefing was closed, the Court set a scheduling order. We had oral argument. The matter was taken under submission. Are you talking about briefing in the district court now? That's true, Your Honor. On summary judgment. Right. The summary judgment briefing down in the trial court. The matter was fully briefed in accord with the timeline issued by the trial court judge. After it was done, our office received some Rule 26 reports done by expert witnesses in the case. And we wanted the trial court judge to take a look at that because we think that that helped us. He started the whole thing. He started the whole thing. We started the whole thing. And the district court said that she wasn't going to consider any of them. That's exactly right. And if you go back and you look at our Notice of Appeal, we had included that in the Notice of Appeal, but on further research we determined in-house that's not a good reason to come to the Ninth Circuit. It's a court scheduling order, abuse of discretion standard, and so we left it alone. So they had it from an expert, from a doctor that said that he would have, that the deceased would have survived had he been taken, well, he didn't say completely, but could have stood a chance that there was a surgery that could be done that if he had gone to, right? Your Honor, that's not focused on what he said. What he said. More likely than not he would have survived if he'd been sent to a hospital, isn't that what the doctor said? I believe that that's down there, but that's a causation issue that's not so much in front of the court. What he said that we wanted in front of the trial court was this individual died, as the coroner said, of an aortic dissection. I do not fault the jail medical staff for not recognizing that. He did not display the symptoms of a classic aortic dissection individual, including his age. So what you wanted in there is the good part. In a big way. Well, I wanted it all in. I weighed it all out, and I wanted to get it in. Then they wanted the bad part, from your point of view, that he probably would have survived if he'd been sent to a hospital. Well, Your Honor, the thing that we liked about the good part is you never even get to causation. The judge says, the district judge, I don't need to look at the good part or the bad part. Is that what happened? That's exactly what happened. The trial court judge said, briefing is closed. I gave everybody my scheduling order. The briefing was done pursuant to my scheduling order. This is not going to keep going. We're not going to have continued briefing. I guess I'm sort of looking at that, and I'm trying to ascertain, actually, I think the district court's perspective on some level was, it doesn't really help in saying whether there was deliberate indifference. It basically would go to later that the person died and damages and any number of things, if you find that. If we're analyzing for deliberate indifference, we have to look at what each person knew at that particular time. We also then have to, which it would seem to me that the analysis, while we're looking at the same law and we're looking at a serial type of thing, it may not even be exactly the same as to each person that's in the line. Obviously, if there was a person, let's say if there was a person that didn't see the deceased, was just somewhere else in the office, and their name were included, and they had no information about anything, they had no authority, they weren't a nurse, they weren't anyone, well, that person likely would not, why would they be being sued? Under the precedent of this court, they would not have a claim against that type of individual. But still, when we look at the people that we have, we have the first nurse, and then the nurse calls the doctor, then the doctor says certain things, then we have another nurse later, so arguably, and this occurs over a period of how many hours? Something like 14, or something like that. So, the last person may or may not be in the same position as the first person, or the doctor that took a phone call and didn't actually, so we have to look at all of what, and give all inferences to the deceased that's bringing the lawsuit. I'm having trouble understanding, now I'm just talking about the doctor at this point, not all the nurses, why he isn't, why there isn't a jury triable case on whether the doctor was deliberately indifferent. You've got the objective part, it was a serious condition, you've got the subjective part in that he had the calls from the nurses, and he didn't even come over and look, and the calls are for what seems, they may not know, and he may not know exactly what the cardiac problem is, but it's pretty obvious that there's some kind of cardiac problem, unless the patient's faking it or nuts. Your Honor, I'm going to try to help out the Court. Part of my job, when I'm not in the Ninth Circuit, is to listen up, read, and study this Court's opinions, because it's not just an academic exercise out there in the real world. These things matter to the public employees in this circuit, and when this Court says something, what needs to happen, how it needs to happen, that's clearly established law in my book. And when we get that information, whether it's social workers for our clients... Could you come back to why deliberate indifference by Dr. Lee wasn't a jury question? This Court has never said, not even once, that heart pain of the type that was presented by this individual with no prior history of heart problems or no reported health problems of any type. He was 30 years old. He came to the nurse, and the nurse doing her job said, Well, you know, we don't have any good answers for your chest pain. It was flu season. It's the middle of the winter. The nurse says, How can we help? Do you have any explanation for what's going on here? And he volunteers, Yeah, I've got a lot of time to kill. I'm in my cell. I'm awaiting sensing. I am nervous. I am anxious. And on top of that, I've been doing push-ups. Well, the nurse, applying her medical knowledge and common sense with the jail population that she deals with, says, Here's a 30-year-old individual. And they asked him at intake. And they asked him during the course of his complaints repeatedly. And she, in fact, thought, We can't just blow this guy off. We have to call the doctor. And that's why they're not deliberately indifferent. But the doctor is the one that I asked about. Your Honor, where is the clearly established case that told that doctor? But can I ask that? Because I tend to agree with you on the clearly established. And we can flesh that out. And maybe what Judge Kleinfeld's asking, I don't want to be presumptuous, is, Is there an underlying constitutional violation? Because you could have an underlying constitutional violation, but it's not clearly established. And you seem to be focusing on it's not clearly established. Is there, though, an underlying constitutional violation, even if it wasn't clearly established? No. Because medical professionals are judged not by what we all know at the end of the movie. Under the Constitution and under California tort law, for that matter, it's what they know in the moment. I agree with you. But the one factual hang-up I have is the nitroglycerin, right? They gave him nitroglycerin at one point. That is inconsistent with thinking that this is just, you know, someone who's nervous or having an anxiety attack. Then when he comes back and says, hey, the nitroglycerin isn't working, then they sort of give him, I think they gave him aspirin. Ibuprofen. Yeah, and so that's where I'm hung up on, there's something that didn't go right here. Now, that doesn't mean it's a constitutional violation, but it's different than just saying, hey, we couldn't have figured this out. Somebody at one point during this time thought that it was pretty serious to give him nitroglycerin. So could you address how that all fits in together? Your Honor, with regard to the doctor, again, it's our job and other law firms that work for the county to read the court's opinions. You clearly established law in this circuit. I'm telling you, I'm sort of with you on the is it an underlying constitutional violation when you acknowledge that it's a serious, isn't giving someone nitroglycerin, isn't that acknowledging that it's a pretty serious condition? Your Honor, that's the exact opposite of deliberate indifference. That's not my point. Once you give it and recognize it's a serious condition, then to go in and say, well, now we're just going to give you Motrin. Usually that works in reverse. We'll start out with Motrin, then we'll go up to nitroglycerin. When you start out with nitroglycerin and then you come back and say, well, that didn't seem to work, so we'll go ahead and give you some Motrin, that's confusing to me. And why isn't that deliberate indifference? Set aside the clearly established. I got your argument on clearly established. I want to know, is there an underlying constitutional violation here by treating it seriously, recognizing it's serious, and then downgrading the medical care? No. No court, to my knowledge, a district court, circuit court, anywhere else, has ever said that it's a violation of the Constitution to treat reported chest pain with nothing else. That's not my question. That's factually distorted the way you just characterized it. What we've got in the records here is chest pain, pain radiating to his arm and jaw, vomiting, nausea, shortness of breath, hands and feet numb. It's hard also to have ordinary knowledge that pretty much everybody has. You call a doctor's office with those symptoms or your wife or secretary or somebody reports those symptoms. The doctor just says, send them to the emergency room immediately. And that's what happens. The ambulance comes and they take people to the emergency room. I mean, it's classic heart attack symptoms. As for exactly what's the matter with the heart, you don't find out until you've done a bunch of imaging. But it's just classic heart attack symptoms. I don't see how Dr. Lee, as opposed to the nurses, isn't being deliberately indifferent when he doesn't say, send them to the hospital. Your Honor, with respect, I believe the court is addressing California state tort law. And they have that claim. No, I'm not. I'm just addressing the federal constitutional question. Deliberate indifference, as I said, has two components to it. First of all, there has to be a serious medical need. There has to be an objective component of a serious medical concern and a subjective component of being more than negligent but less than intentionally hurting somebody. If this individual was complaining as he did of pain radiating the way that it was, that... Don't minimize it. You've got to deal with the facts as they are, not the rhetoric. Don't they also have a policy that says when you give nitro and it doesn't work? I think the nurse, I don't know, Teofilo or whatever, however you say that name, said yeah, I know we have a policy when the nitro doesn't work, then we're supposed to send them to the hospital. Is there some policy like that? Your Honor, that was an internal Orange County policy that was set to keep our people away from this court. Well, okay, but what I'm saying, if there is a subjective component and she acknowledged that she was aware of that and she said that she gave them nitro, it wasn't working, wouldn't... Isn't that certainly make a triable issue as to whether she was deliberately indifferent at that point? Your Honor, I don't believe so and the reason why that I say that is the constitutional law says that a nurse, and I apologize, there's been a lot of briefing in this case, but I briefed it the other day to another court, if a nurse reaches out to a higher level of care because she's out of answers and she gets some answers from either a nurse practitioner, and our nurse practitioner here told her continue with what Dr. Lee said. The nurse practitioner is not a party in this case, but in any event, the nurse did the right thing. She reached out to a higher standard of care and said, what do I do? And she was told at that point, continue doing what you've been doing. If plaintiffs had a grievance with that, they should have sued that individual and they haven't. Well, can the nurse send someone to the... The nurse clearly, when he was slumped over, sent him to the emergency room on her own, right? That is exactly right. So a nurse doesn't need a doctor to tell him or her that you've got to go to the emergency room, right? Anybody can call 911 and that's the way that they do it. But with regard to the nitroglycerin point, doesn't that show the exact opposite of the type of callous indifference that deliberate indifference was meant to address? Is there a budget issue here? Does the jail lose money out of its medical budget if it sends people to the hospital and has to pay a hospital bill? Your Honor, I don't know. I was trying to figure... I mean, everybody knows and we can't pretend not to that you won't even get to the doctor with these symptoms because his nurse or his receptionist is going to say send him to the emergency room immediately. We all know that. That's why it's so odd that Dr. Lee didn't say that. I was trying to think of why. I haven't read all the discovery in this case. I don't know what everything is in the record in this case. I've just read some of the excerpts and I was thinking, boy, that would be a reason why there will be less money for everything else in the medical department. I think the problem for this individual, this decedent, was his youth, medical literature. Youth cuts against him, but a lot of people since cocaine became fashionable, you get a lot of young people with heart problems and all doctors know it. Well, Your Honor, at that point he had been in the Orange County Jail and presumably away from that type of substance for some period of time. Oh, they don't have any dope in the jails, you're saying? No, I have some lawsuits about that, too. No, I think it was his youth, his reported good health, his reported lack of any heart problems, even when he was repeatedly asked, and his explanation. He gave an alternative explanation. Well, you're basically saying if at most it was medical malpractice and it was tragic, but it wasn't deliberate and different. That's exactly right, Your Honor. They do have that claim in this case. That's not up on appeal and maybe that's a jury worthy claim on down the line. Do we have Dr. Lee saying the reason I didn't send him to the emergency room was his youth and so forth? Yes, that was part of it. Where did he say it? I want to read it in the excerpts. Your Honor, I would like to be able to point you to a page, but I can tell you that's what the man said. I just want to read it, so if you can tell me where Dr. Lee is. Perhaps we've taken you over, but this is an important case and we have a lot of questions. Unless we have more questions now, why don't you take a seat. I'll give you some time for rebuttal after I hear from the other side. Maybe you can find that page for us? Your Honor, I'm going to try. Good afternoon. Good afternoon to all of you. I think you've already hit on some of the main points. I have a couple of questions for you. I have two particular questions. The first is on this motion to strike, does any of it matter? It sounds as though as Judge Callahan said, it just goes to causation and damages. It doesn't go to deliberate indifference. I don't think it necessarily matters. It's difficult to know for sure everything considered by the district court judge, but those were part of the record. But did she say she wasn't considering them? That part's less clear to me. But didn't the district court, when it denied, I took it, when they denied the motion for the supplemental briefing that that was then excluded from the Could very well be. I don't think it really matters to the issue you have to decide here. I don't think the causation. Okay, let me get to my next question then. My next question is, as you could probably guess from my questions, I'm interested in the possibility of deliberate indifference by Dr. Lee. For the nurses, the whole bunch of them, it looks like they had a patient who looked like he was in a dangerous situation, acute distress, so they call a doctor and ask the doctor what to do, and then they follow his directions. And as far as I'm aware, that's what nurses are supposed to do. And they did it. They're supposed to ask the doctor what to do and do what the doctor says. I understand your case against Dr. Lee for deliberate indifference, but it's hard for me to see the deliberate indifference by the nurses. What did they do that's deliberately indifferent, leaving out the theory that doing what Dr. Lee said was deliberately indifferent? Sure. Well, I'd like to address that because I think it's important to consider the context of the jail setting where the nurses are there and the doctors are not. And the nurses, as is pointed out, this went on for 14 hours. And they all documented the symptoms themselves and observed the symptoms themselves. I listed about 20 different symptoms indicated in the records, which are their records. And as I think Judge... Did they just say, ah, he's a criminal, forget about it, he's lying, or did they call a doctor and ask what to do? They called the doctor. One of the nurses called the doctor. But I think what's important, and Judge Callahan addressed it in a way, as did Judge Nelson, is that the nurses have the ability and the authority to call the paramedics and for someone to go to a hospital. No question. They could have sent them to the hospital by themselves. What a doctor might think, who doesn't even see the patient in this case. In other words, the conversation was over the phone. Look, I don't think it's disputed that they could have sent him to the emergency room themselves. They weren't compelled to do what the doctor said. But ordinarily nurses do do what the doctor says. And it's hard for me to understand why it would be a constitutional violation not for them. Well, I think the district court did a good job in the order on summary judgment, breaking down both the objective component and the subjective component for each particular defendant. The information they specifically had and what the evidence of deliberate indifference was. With Nurse Tieffolo, she had information of nausea, vomiting, hyperventilating, chest pain, pain increasing, condition deteriorating, the deceased asking for help, saying his was aware the nitroglycerin was given. And that's a key point we believe here. You don't give nitroglycerin to someone unless and who made that decision? The nurses gave him nitroglycerin because their specific training and policy says if you have evidence of a possible cardiac problem, which I think the record is pretty clear we had, you give nitroglycerin. There's another thing they do. Typically, if there is some group of symptoms that suggests a possible heart attack, they take a blood sample and they test for a particular protein that's emitted from the heart when there is damage to the organ. I can't remember where I saw it. I thought that somebody gave him that test, but I don't remember. Were there any results back from that test to take a blood test? Not that I'm aware of, Judge Nelson. I think the whole issue, which is pretty obvious, which should have been obvious not only to the nurses, but even a lay person, if anybody had the symptoms that we're talking about here, even a nonprofessional, if you had a family member or a friend, whatever their age, you would take them to the hospital. Because at the hospital they can do things that we can't do. So maybe that gets you as far as medical negligence. Well, I think we're way beyond that. But why? He came in and they met with him every time he came in. I mean, it doesn't show a deliberate indifference as if they weren't trying to figure it out. They may not have been giving him the most competent medical care. They virtually did nothing for him. Well, they gave him nitroglycerin. That's true, but that's the problem, because their specific training says you give him the nitro. If it doesn't alleviate the problems, you send him to the hospital. That's it. You send him to the hospital, and not only did it not alleviate his problems... There's not a case that says that. It's a policy. So I'm not saying that I think that's... And that nurse Teofilo acknowledged that. So subjectively she was aware of that policy. So did Nurse Trout also acknowledge that. But again, why isn't that just negligence? You rely on the Wong case. That's the primary case you rely on? Not really, because we do rely on it in part. Well, what is the case that shows that this is clearly established? We believe there have been decades of cases, starting from Estelle v. Gamble and on down the line. Estelle v. Gamble doesn't cover this case. But what it says is that if an inmate, even a convicted felon, and here we have a pretrial detainee, has serious medical condition, that has to be addressed. It can't be ignored. And if someone's having a cardiac event that is potentially life-threatening, do we really need a case to tell us that that person needs to go to the hospital? Do we really need that? A nurse or doctor wouldn't know that? So is that your argument, that this is so clear that we don't need a case? Is that your argument? That's part of it. That's not the whole argument, Judge Nelson, but that's part of it. Because you're right, the Supreme Court has said that, but those are very rare circumstances. But I would say this, with all due respect to the era of qualified immunity, I think an argument could be made that it may be taking, being taken by some too far. The Supreme Court? Is this an issue with the Supreme Court? Well, the Supreme Court in part, but maybe more the way it's being applied by some. Well, I'm going to agree with you. At the point that he's slumped over and he's nonresponsive, I don't think you need a case for that. Okay. So I agree with you there. The question is, we do get criticized for describing things too generally, as opposed to more specifically. And so that's... I understand that. And at some point, let's just say the first hour with the first nurse, I think you're in a different situation than you are at hour 14. Well, I agree. I think it's a sliding scale, but I think the game changer is when you have the cumulative symptoms that he had, and I hadn't listed all of them, but I think you're aware of them from the record. And then they give the nitro. At what point did they give that? That was early on, Judge Nelson. That was like 1230 in the morning. That's like ten hours before. Ten hours where this guy, and for four hours they never even saw him. He never even went to sleep. He literally thought he was going to die and did die and was crying out for help. I mean, this really is an egregious case. I'm just imagining this young man, a pretrial detainee at 30 years old, who just wanted to go to the hospital and see a doctor. That's all they had to do is pick up the phone. Did he actually ask to go to the hospital? He asked to see a doctor. Now, I don't know. Again, he's dead, and we have to scrutinize the record. But what I'm trying to say is that if we're going to get to a place where someone has 20 complaints consistent with a serious cardiac problem, where the very defendants in the case know that a person could die from that and needs to go to the hospital, their own training tells them that, and we're going to say, show me a case with these specific facts or else you're out of court. That's an overstatement, but look, this is a constitutional violation. Deliberate indifference is a high standard. So everything that you've argued about, there's no question. I don't think you're going to find a lack of sympathy here. I mean, we're all very sympathetic to what happened here. But the question is, does it rise to a question of deliberate indifference? And the answer is yes, but I would just go one step further. At this point, that's all there has to be is a triable issue of fact. You don't have to conclude conclusively. Well, we have to deny qualified immunity. You have to deny qualified immunity, but there's even cases that we cited where there's evidence of deliberate indifference if a jury makes that finding, and we feel there's an abundance of evidence to support it. But you cite, that's what I want to know, what cases do you primarily rely on? As I read it, it was the Long case. Well, that was only because it dealt with the cardiac issue. Well, but that's what you've got to have. I mean, you can't just say general medical care. Well, that's where I don't 100 percent agree with you, even though I hear what you're saying. Well, especially when someone has a condition that's really hard to diagnose. If it's a different type of case. In other words, I could imagine, Judge Nelson, a situation where they didn't have the symptoms, they didn't know it was a potential cardiac event, life-threatening, and then you could say, well, this is kind of different. We might need a case to put them on notice. But through their own testimony, when they're saying that, yes, based on our training, this is life-threatening, this is cardiac, that's why we gave them the nitro, and then leave them to die over the next 10 hours. I would just say the basic, even the basic Eighth Amendment principles of addressing obvious serious medical needs would cover this. And we didn't cite Long because it has a cardiac issue and others. But to say that you would, from our perspective, you would need a specific case to let them know, we don't believe that you do. I mean, that is, we think it's so obvious in this case that he should have been sent to the doctor, and I would hope in the future, if they have a similar situation, they'll send that person to the doctor, because anybody has that right, and I do think it's a constitutional right. Now, the Ninth Circuit changed its standard a bit on deliberate indifference in the Gordon case, is that right? That's the way I read it. But that happened after this incident. So would you agree that we can't consider the standards in Gordon for purposes of deliberate indifference here? I would agree that we have to look at the time frame that this happened, in January 2016. I think Gordon was decided in 2018. But in looking at the district court's order in this case, she clearly, when she got to the second element of deliberate indifference, continued to cite Farmer v. Brennan as to the subjective element, and she went out of her way to put in the record, in her order, the subjective information each defendant had, even the nurse's, Judge Kleinfeld, what they had, what they knew, and why, in her opinion, there was evidence of squabble. I understand. My question about the nurses is a little different. You're addressing whether the nurses knew enough to know that this guy's in serious danger of death, on account of a cardiac condition of some sort. That is not my question. I'm saying, assuming that, why don't the nurses avoid the constitutional violation by telling the doctor what's happening, and doing what the doctor says? That, after all, is what happens when a patient is in a hospital, goes to a medical facility or hospital. And my response to you, Judge Kleinfeld, would be the makeup of what was happening in the jail, because... The separation is not that different. When you go to a doctor's office, or even a hospital, often doctors don't see you. You just get a bunch of paramedics and nurses and nurse practitioners and whatnot, and if they don't think it's worth asking the doctor, they don't. The point I would make, Judge Kleinfeld, is this. There are no doctors at the jail facility. There was one call made to a doctor. There seems to be a dispute as to how much information he had. He says he had limited. The nurse says I told him everything. But... That has to be taken in your favor. Right. But, given that the nurses are seeing him throughout a 14-hour period, they're not going to ask you again. Oh, absolutely. Or just directly call the paramedics. Or just disregarded what the doctor said? Well, that seems to be what you're saying. In part, I would say... I mean, how would they be on... I mean, if you disregard what the doctor says, you get fired. Okay. I agree with you there, Judge Callahan. It just doesn't seem like you could get off the phone with the doctor. He tells you to do X and you turn around and do Y. But if an hour goes by, two hours, three hours, you have new symptoms, you have increasing pain, you have problems. Hours are going on. You have the authority. It's early in the morning to get this guy to the hospital. Well, now, I know you think everyone should be included in this. But would you agree that we have to analyze each person in terms of separately? Yes. And that arguably, and I'm not saying that that's what we would do, because we haven't even talked about it, that we could find that someone's entitled to qualified immunity and someone isn't here. It's not one size fits all. It's possible, but from our perspective... Well, I know from your perspective what you're arguing, but we still have to look at everyone separately, don't we? Absolutely. I absolutely agree, because we think the law was clearly established. I understand Judge Nelson's concern. Show me an exact or very similar fact pattern. I get that. But we believe, as the Court outlined in her order, there was sufficient evidence on each defendant because they were there, they were observing it, they had the specific knowledge, but at a minimum for each defendant, it's a triable issue of fact for the jury. I'm trying to find out what they should have done that their deliberate indifference caused them not to do. Was it to fail to send them to the hospital or fail to call the doctor a second time or what? I would say three things. Number one, they should have got them right to the hospital. Should have called the paramedics after the nitro. When you say called the paramedics, you mean dial 911? Call 911 and say, hey, we gave him the nitro, there's no one, he didn't, not only did he not get better. He said send him to the hospital. Send him to the hospital, that's number one. Okay, that's number one. They should have called the doctor back at some point or tried to during this court. I think it was about ten hours, Judge Nelson, in between. And I think that's important in this case, the length of time and the length of complaints as opposed to just one visit with a couple complaints and that was it. And the third thing is if you look carefully, Judge Kleinfeld, at their training and protocol on the nitroglycerin, they didn't follow that because they're supposed to give a second repeat. I can't remember right now. Did they tell the doctor about the patient before or after they gave the patient the nitro? I'm pretty sure it was right after. Hold on one second. I'm looking at my colleague and I have a kind of a cheat sheet, I guess you'd call it, that would tell me that. We don't have a 50-50 call a friend, you know. Yeah, right. Yeah, exactly, right. So the doctor was called at about 1248 and afterwards, nitro was after the doctor's call? My 50-50 reach out believes that that was after the call. What you're saying is after the nitro did not relieve the patient, they should have called again. Right, so there was two aspects to that, either calling the doctor back, getting him immediately, but they also had the second component to their policy. But isn't that better for the doctor? If the nitro hadn't happened before the call to the doctor? Right. See, now, arguably, that's an interesting point because on the one hand, well, there's a lot of interesting points here. No, but I'm just trying to think in terms of because the nitro, it said if the nitro doesn't work, then, but that can't be, I think the nitro was before the call to the doctor. It was. I'm looking at, I think it all happened at 1248. And then the doctor said the Motrin was after the nitro. I agree. I believe that is accurate, Judge Klinefeld. Okay, well, we can verify that. But in any event, those would be the three things, Judge Klinefeld, to get him to the hospital, just call 911, to follow up on their own nitro protocol, which they failed to do, and at a minimum, to call the doctor back. Because looking at it from the doctor's point of view, he got the one phone call, and for 10 hours, I don't know how long he was on or who were the next doctor, for 10 hours with increasing symptoms and pain and complaints, not one call to a doctor. Okay. Well, we've taken you over four minutes over, so thank you for your argument, unless either of my colleagues have additional questions. Thank you so much. Thank you. Thank you. All right, I'll give you two minutes for rebuttal, and that will basically even out our time. Your Honors, thank you. In follow-up, math is not my strong suit, but I did try to do some on the fly. I believe that this entire event, from his initial presentation to the nurses, to the man-down call, was about 14 hours. In response to some of the Court's questions about the timeline, the record shows, the excerpt's record at page 400, nitroglycerin was administered at 1.08 a.m., and after that was done, that's when the nurse contacted Dr. Laid. And that is excerpt's record 412. And Dr. Laid, at that point, in his declaration to the trial court, says what information that he had, what he did, why he did what he did, which included a suspicion that what Mr. Russell was experiencing was a mental health problem. And so, in the middle of the night, they arranged for mental health treatment for him. In the middle of the night, this was done. He was transferred to another facility so they could see if there was a psychological explanation that explained the chest pain, the dizziness, the other concerns that he was expressing. And all that was done by Dr. Laid. That's not the mark I respectfully submit of a deliberately indifferent, uncaring individual. Very important point. Excerpts of record 415 and 416. That's when a nurse practitioner, the nurses that are operating... I'm trying to figure out the motivations because that really is the subjective component of deliberate indifference. And I just can't imagine why the doctor would start with mental health until he ruled out the most dangerous possible reasons for the symptoms. Your Honor, I believe if there was medical testimony, expert medical testimony in the record, they would tell you that somebody with 30 years old... Usually 30-year-olds don't have heart attacks, but since they started using cocaine, it's not that uncommon anymore. But we have an individual that has... He's saying it's a panic attack. Right. He is saying that he's... Could be. He's nervous about his sentence and rightly so. Could be. On the other hand, you don't die of panic attacks. Doctors and nurses are trained. Like when lawyers have clients, you listen up. You see what's on their mind. What can you tell us? The doctor could not listen and make a judgment because he wasn't there. He didn't go to the jail. Your Honor, and maybe that's something they say in their medical malpractice trial if they have one. But this is deliberate indifference. This is the United States Constitution. Well, there are circumstances where you're deliberately indifferent if you don't just get up, put on your shirt and pants and drive the 15 minutes. Your Honor, we would have deliberate indifference if Dr. Lee said, it's too late, I don't care. I'm not going to pick up the phone. I'm not going to listen. Why isn't that a fair jury inference? The fair jury inference on... I mean, you don't need subject, you don't need somebody with personal knowledge like the doctor's wife to say that that's what he said when he was called in the middle of the night. A jury can draw an inference from circumstantial evidence that that's why he didn't go. But this is why we have qualified immunity. If all these trials, if they all went, if there was no screening, by Senate-confirmed trial court judges, by this court, everybody would do the job. I have no problem with it being arguably negligence, but there'd definitely be qualified immunity if, say, all this pain was due to a compressed cervical nerve, which can cause the same pain, the same symptoms. And if there was, if the doctor had thought, based on a full symptom report, that that's what the problem is, but not deliberate indifference. But that's not what happened here. Nobody's pointing me to anything where the doctor really explained some alternative that he thought. Well, what I can tell you is that the next day, as matters progressed, the nursing defendants that are being sued in this case, they reached out to a higher level of care, a nurse practitioner, and that was at 10.43 in the morning. Barely two hours before this individual went unresponsive. Suddenly. And let's also look at what the nurses were doing, too. He didn't go unresponsive. Well, I guess the question is, I think that we know what the facts are, and we've taken you way over as well. It's a question whether it's a tribal issue as to whether it's deliberate indifference or not. And you're saying it's not, they're saying it is, and then we've got to go from there. But do either of my colleagues have any additional questions? All right. And that will conclude my argument. Thank you both for your helpful arguments in this matter. We appreciate it. All rise. Court stands adjourned. This court for this session stands adjourned.
judges: Kleinfeld, Callahan, Nelson